UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　　　　Plaintiff,<br><br>　　v.<br><br>SABIR SHABAZZ,<br><br>　　　　　　　　Defendant. | CASE NO. CR12-0033JLR<br><br>ORDER |

## I.　INTRODUCTION

Before the court is Defendant Sabir Shabazz's motion for a reduction in sentence pursuant to 18 U.S.C. § 3582(c)(1)(A)(i).  (Mot. (Dkt. # 150); Reply (Dkt. # 169).) Plaintiff the United States of America (the "Government") opposes the motion.  (Resp. (Dkt. # 162).)  The court has considered the parties' submissions, the balance of the record, and the applicable law.  Being fully advised, the court DENIES Mr. Shabazz's motion.

//

ORDER - 1

## II. BACKGROUND

Mr. Shabazz is a 32-year-old inmate currently detained at United States Penitentiary, Florence Administrative Maximum Facility ("ADX-Florence"). (*See* Resp. at 2; PSR (Dkt. # 164[1] (sealed)).) On September 23, 2010, Mr. Shabazz was arrested for sex trafficking minors. (Plea Agreement (Dkt. # 24) at 7 (describing Mr. Shabazz's involvement in the sex trafficking of two 13-year-old runaways); PSR ¶¶ 12-20 (same).) While detained at Federal Detention Center, SeaTac ("FDC SeaTac") awaiting trial on that charge, Mr. Shabazz and another inmate, Roy Fritts, brutally attacked FDC SeaTac Officer M.M. during his morning rounds. (PSR ¶¶ 6-8; *see also* Resp., Ex. B (video of the attack).) Mr. Shabazz approached Officer M.M from behind and hit him in the head with a steel pipe, causing Officer M.M to fall to the ground. (PSR ¶ 6; Plea Agreement at 6.) After Officer M.M fell, Mr. Shabazz continued to strike him in the head with the steel pipe. Mr. Shabazz struck him approximately "7-8 times" before two other inmates intervened and grabbed Mr. Shabazz. (PSR ¶ 6; Plea Agreement at 6.) Officer M.M was able to "stagger[] away" and radio for help while the other inmates prevented Mr. Shabazz from further attacking Officer M.M. (PSR ¶ 6; Plea Agreement at 6.) When other FDC SeaTac officers arrived, Mr. Shabazz and Mr. Fritts refused to return to their cells and instead prepared to fight. (PSR ¶ 7; Plea Agreement at 6-7.) "Several officers were assaulted" during their attempts to subdue Mr. Shabazz and Mr. Fritts. (PSR ¶ 7.) Officer M.M. "suffered three skull fractures" and "required immediate surgery" for one

---

[1] The presentence report ("PSR") appears on pages 1-36 of docket entry 164.

of the skull fractures. (PSR ¶ 8; Plea Agreement at 7; *see also* Resp., Ex. G ("[Officer M.M.'s treating physicians stated that,] had the assault continued, . . . [Officer M.M.] would have certainly" or "likely" died.).)

Mr. Shabazz pleaded guilty to three counts[2] of assault of a federal officer with a dangerous weapon in violation of 18 U.S.C. §§ 2, 111(a), and 111(b) and one count of benefiting from forced labor in violation of 18 U.S.C. § 589(b). (*See* Plea Agreement at 1-2.) Pursuant to the terms of the plea agreement, the parties agreed to recommend a sentence within the range of 25 to 35 years. (*Id.* at 9.)

On January 15, 2013, the court sentenced Mr. Shabazz to 32 years of imprisonment and three years of supervised release.[3] (Judgment (Dkt. # 41); 1/15/13 Min. Entry (Dkt. # 40).) The court remanded Mr. Shabazz into custody following his sentencing hearing, and his projected release date is April 28, 2038. (*See* Judgment at 2; Comp. Release Memo. (Dkt. # 160 (sealed)) at 1.)

//

//

---

[2] The first count pertains to the assault on Officer M.M. and the other two counts pertain to the assaults on responding officers A.S. and J.W. (*See generally* Am. Information (Dkt. # 20); at 1-2; Plea Agreement at 6-7.)

[3] Mr. Shabazz's co-defendant, Mr. Fritts, elected to go to trial, and a jury convicted him on one count of conspiracy to assault a federal officer in violation of 18 U.S.C. § 1114 and three counts of assault on a federal officer with a dangerous weapon in violation of 18 U.S.C. §§ 2, 111(a), and 111(b). (*See* Verdict (Dkt. # 109) (convicting Mr. Fritts on all counts alleged in the superseding indictment).) On October 21, 2013, the court sentenced Mr. Fritts to 28 years of imprisonment, to be served consecutively to a life sentence Mr. Fritts had received for a separate offense in the State of Wyoming. (*See* 10/21/13 Min. Entry (Dkt. # 117); Fritts Judgment (Dkt. # 118).)

### III. ANALYSIS

Mr. Shabazz now seeks a reduction in sentence pursuant to 18 U.S.C. § 3582(c)(1)(A), asking the court to reduce his sentence from 32 years to 25 years. (*See generally* Mot. at 1, 19.) The court begins by setting forth the standard of review before analyzing Mr. Shabazz's motion.

**A.  Standard for a Reduction in Sentence**

A court generally may not correct or modify a prison sentence once it has been imposed, unless permitted by statute or by Federal Rule of Criminal Procedure 35. *United States v. Penna*, 315 F.3d 509, 511 (9th Cir. 2003); *see also Dillon v. United States*, 506 U.S. 817, 824-25 (2010). 18 U.S.C. § 3582(c)(1), as amended by the First Step Act of 2018, "allows certain inmates to seek a form of sentence modification," commonly referred to as compassionate release,[4] "by filing motions to that effect with the district court." *See United States v. King*, 24 F.4th 1226, 1228 (9th Cir. 2022); *Riley v. United States*, No. C19-1522JLR, 2020 WL 1819838, at *5 (W.D. Wash. Apr. 10, 2020). Under § 3582(c)(1), courts have the authority to reduce a sentence upon the motion of an inmate if three conditions are met: (1) the inmate has either exhausted their administrative appeal rights of the Bureau of Prisons' ("BOP") failure to bring such a motion on the inmate's behalf or has waited until 30 days after the applicable warden has

---

[4] "Although relief under § 3582(c) is commonly referred to as 'compassionate release,' such relief is not limited to immediate release, but includes a reduction in sentence." *United States v. Millard*, No. CR-15-01391-PHX-DGC, 2022 WL 279596, at *2 n.1 (D. Ariz. Jan. 31, 2022) (quoting *United States v. Marks*, No. 03-cr-06033-L, 2020 WL 1908911, at *3 n.3 (W.D.N.Y. Apr. 20, 2020)).

ORDER - 4

received such a request; (2) the inmate has established "extraordinary and compelling reasons" for the requested sentence reduction; and (3) the reduction is consistent with "applicable policy statements" issued by the United States Sentencing Commission. *See* 18 U.S.C. § 3582(c)(1)(A)(i); *see also Riley*, 2020 WL 1819838, at \*5. If the inmate meets all three conditions, the court must consider the sentencing factors set forth in 18 U.S.C. § 3553(a) when deciding whether a reduction in sentence is appropriate. *See* 18 U.S.C. § 3582(c)(1)(A).

The Sentencing Commission's policy statement referenced in 18 U.S.C. § 3582(c)(1)(A)(i) provides, in relevant part, that a defendant may be eligible for compassionate release if "extraordinary and compelling reasons warrant the reduction"; the "defendant is not a danger to the safety of any other person or to the community"; and the "reduction is consistent with this policy statement." U.S.S.G. § 1B1.13; *id.* cmt. n.1 (outlining four categories of circumstances that may constitute "extraordinary and compelling reasons" for a sentence reduction).

The Ninth Circuit, however, has held that U.S.S.G. § 1B1.13 "is not an 'applicable policy statement' for 18 U.S.C. § 3582(c)(1)(A) motions filed by a defendant." *United States v. Aruda*, 993 F.3d 797, 802 (9th Cir. 2021). Therefore, the "Sentencing Commission's statements in U.S.S.G. § 1B1.13 may inform a district court's discretion for § 3582(c)(1)(A) motions filed by a defendant, but they are not binding." *Id.*; *see also United States v. Van Cleave*, No. CR03-0247RSL, 2020 WL 2800769, at \*5 (W.D. Wash. May 29, 2020) (referring to the policy statement as "persuasive, but not binding").

//

**B.      Exhaustion of Administrative Remedies**

Before considering the merits of Mr. Shabazz's motion, the court must determine whether he has met the statutory exhaustion requirement for a reduction in sentence. *See* 18 U.S.C. § 3582(c)(1)(A). Mr. Shabazz made a request for a reduction in sentence to the warden at ADX-Florence on September 3, 2021, which was denied on September 10, 2021. (*See* Mot. at 14; 7/12/22 Williams Decl. (Dkt. # 151) ¶ 5, Ex. 5.) Mr. Shabazz then filed this motion on July 12, 2022—more than 30 days after he submitted his request to the warden. (*See generally* Mot.) The court finds that the statutorily required 30-day period has expired, and Mr. Shabazz's motion is properly before the court.[5]

**C.      Extraordinary and Compelling Circumstances**

The court must next determine whether "extraordinary and compelling" circumstances warrant a reduction of Mr. Shabazz's term of imprisonment. *See* 18 U.S.C. § 3582(c)(1)(A)(i). Mr. Shabazz bears the burden of establishing that "extraordinary and compelling reasons" exist that justify a reduction in sentence. *See United States v. Suryan*, No. CR19-0082RAJ, 2021 WL 3510423, at *2 (W.D. Wash. Aug. 10, 2021).

Mr. Shabazz argues that the "3,800 days" he has spent in "solitary confinement" amounts to torture and that such an extended period of solitary confinement constitutes an extraordinary and compelling circumstance warranting a reduction in sentence. (*See* Mot. at 1, 7-13, 14-16; Reply at 1, 2-5.) Mr. Shabazz argues that his conditions of

---

[5] The Government agrees that Mr. Shabazz complied with § 3582(c)(1)(A)'s exhaustion requirement. (*See* Resp. at 7 n.5.)

ORDER - 6

confinement at ADX-Florence amount to solitary confinement because he is only allowed to leave his cell for one hour a day; must eat his meals alone in his cell; is unable to see or have direct contact with inmates in adjacent cells; has to exercise alone in a small, indoor recreation cell; has limited opportunities for visitation and human contact. (*See* Mot. at 7-13, 15 (explaining why such conditions amount to solitary confinement and contending that Mr. Shabazz's extended period of solitary confinement constitutes torture according to the United Nations); *see also* 7/12/22 Williams Decl. ¶ 4, Ex. 4 (Amnesty International Report on ADX-Florence).) According to Mr. Shabazz, this prolonged isolation has caused him to suffer psychologically. (*See* Mot. at 15-16 (alleging that he has experienced, among other things, "appetite and sleep disturbances, anxiety, panic, paranoia, hallucinations, self-mutilations, hypersensitivity, cognitive dysfunction, hopelessness, suicidal ideation, and withdrawal"); *id.* at 17 (contending that such isolation is especially psychologically harmful to Mr. Shabazz because he was young when he entered solitary confinement); 7/12/22 Williams Decl. ¶ 19, Ex. 19 (Mr. Shabazz's communication log entry describing the impacts that solitary confinement has had on his mental health); *see also* Dr. Scholtz Report (Dkt. # 154 (sealed)[6]) (providing Dr. Brendon Scholtz's opinions concerning "the psychological effects of long-term isolation in solitary confinement as found in 'Super Max' (ADX) facilities and "the presence of and potential impact on the mental health of" Mr. Shabazz).[7])

---

[6] Dr. Scholtz's report appears on pages 111-20 of docket entry 154.

[7] Mr. Shabazz also states that his incarceration at ADX-Florence has created a disparity between his sentence and his co-defendant's sentence because his co-defendant is serving his

ORDER - 7

While the court acknowledges the impacts that isolation can have on inmates and the harsh conditions at ADX-Florence, the court does not find that Mr. Shabazz's conditions of confinement at ADX-Florence and the impact that such conditions have had on him constitute extraordinary and compelling reasons for a sentence reduction. In determining where Mr. Shabazz should serve his term of imprisonment, the BOP concluded that Mr. Shabazz poses a "very significant threat . . . to staff," in light of his "pre-meditated and malicious assault" of Officer M.M, and designated Mr. Shabazz to ADX-Florence, a maximum-security prison.[8] (7/12/22 Williams Decl. ¶ 12, Ex. 12 (BOP Designation Summary) ("The fact that [Mr. Shabazz] would assault a staff member in such a vicious and heinous manner without provocation demonstrates the very significant threat [he] pose[s] to staff."); *see also id.* (placing Mr. Shabazz in a Control Unit at ADX-Florence for 105 months, to be "increased or decreased as the situation warrants," in light of his conduct).) Mr. Shabazz's argument that his "extended period solitary confinement" at ADX-Florence constitutes torture is essentially an Eighth Amendment argument challenging the manner and conditions of his confinement. Although Mr.

---

term of imprisonment at a medium security prison. (Mot. at 18; Reply at 6-7.) However, he appears to make this point in relation to his argument that the 18 U.S.C. § 3553(a) sentencing factors support his requested sentence reduction. (*See, e.g.*, Reply at 1 (contending that the alleged disparity demonstrates that a reduced sentence of 25 years is appropriate).) Even if the court were to consider the alleged disparity within its extraordinary and compelling analysis, the court does not find the type of disparity Mr. Shabazz alleges to be an extraordinary and compelling reason for a sentence reduction.

[8] The BOP, not the district court, "has the statutory authority to choose the locations where prisoners serve their sentence." *United States v. Ceballos*, 671 F.3d 852, 855 (9th Cir. 2011) (citing 18 U.S.C. § 3621(b)). Under Section 3621(b), the BOP is authorized to "designate any available penal or correctional facility . . . that the Bureau determines to be appropriate and suitable." *See Rodriguez v. Smith*, 541 F.3d 1180, 1182 (9th Cir. 2008).

ORDER - 8

Shabazz's conditions of confinement may be the subject of a civil rights action, they are not properly brought in a motion for a reduction in sentence under § 3582(c)(1)(A). *See United States v. Berrelleza-Verduzco*, No. CR12-0062RSL, 2021 WL 1178189, at *2 n.1 (W.D. Wash. Mar. 29, 2021) (citing *United States v. Numann*, No. 3:16-CR-00025-TMB, 2020 WL 1977117, at *4 (D. Alaska Apr. 24, 2020) (An Eighth Amendment claim "relating to the manner and conditions of confinement—[is] not properly brought in a motion for compassionate release [under § 3582(c)(1)(A)] and this Court does not have jurisdiction to consider [it].")).

Additionally, Mr. Shabazz's conditions of confinement at ADX-Florence are not unique, as every defendant incarcerated at ADX-Florence is subject to those same conditions. *See United States v. Bolden*, No. CR16-0320RSM, 2020 WL 4286820, at *7 (W.D. Wash. July 27, 2020) ("[G]eneral conditions that affect inmates indiscriminately throughout the prison are insufficient to support an individual defendant's claim for compassionate release."). As such, it is likely that a significant number of defendants incarcerated at ADX-Florence, like Mr. Shabazz, are psychologically impacted by the long-term isolation that they experience at ADX-Florence. (*See, e.g.*, 7/12/22 Williams Decl. ¶ 6, Ex. 6 (Dr. Haney's Report) (discussing the literature regarding the "psychological effects of long-term confinement in solitary and 'supermax'-type conditions" and noting that the negative psychological effects of such confinement are "well understood"); *cf. United States v. Ingram*, No. 2:14-CR-40, 2019 WL 3162305, at

//

//

*2 (S.D. Ohio July 16, 2019) ("Many, if not all inmates, have aging and sick parents. Such circumstance is not extraordinary.").[9]

In sum, the court declines to conclude that Mr. Shabazz's conditions of confinement at ADX-Florence and the impact that such conditions have had on him present an "unusual set of facts" that compel this court to reduce his sentence. *See Extraordinary Circumstances*, Black's Law Dictionary (11th ed. 2019) (defining "extraordinary circumstances" as a "highly unusual set of facts that are not commonly associated with a particular thing or event"); *see also Compelling Need*, Black's Law Dictionary (11th ed. 2019) (defining a "compelling need" as a "need so great that irreparable harm or injustice would result if it is not met").[10]  Because Mr. Shabazz has

---

[9] In the context of the COVID-19 pandemic, for example, courts have "consistently rejected . . . generalized arguments as a basis for [a reduction in sentence]," such as challenges to BOP medical staffing, relaxed precautions, and lack of adequate testing. *United States v. Butov*, No. CR16-0226RSM, 2020 WL 5910063, at *5 (W.D. Wash. Oct. 6, 2020); *see also, e.g., United States v. Thomas*, No. 3:17-CR-00051-SLG, 2021 WL 3924724, at *2 (D. Alaska Sept. 1, 2021) ("[E]very BOP inmate—and in fact nearly every incarcerated person—has experienced limitations on their ability to communicate, exercise, gain an education, and receive job skills training during the COVID-19 pandemic.  Conditions that are shared by nearly every inmate in the country are not "extraordinary and compelling," and the restrictions [the inmate] is subject to are in no way unique to him.").

[10] In his motion, Mr. Shabazz also states that he continues to show sincere remorse for his actions and has "striven to do his best" in prison.  (Mot. at 16-17; *see also* Reply at 5-7.)  He offers evidence of his rehabilitation in prison, including the "over 50 classes" he has completed during his incarceration; the incentives he has earned for completing psychological services programs; the book of poetry he wrote in prison; his plan to donate the royalties from his book to Officer M.M. "as restitution"; and his efforts to maintain contact with his family and friends.  (*See* Mot. at 16-18; 7/12/22 Williams Decl. ¶¶ 1, 2, 15, 20, Exs. 1, 2, 15; *see also id.* ¶ 9, Ex. 9 (including a letter of support from Mr. Shabazz's friend); 9/8/22 Williams Decl. (Dkt. # 170) ¶ 1, Ex. 20 (including two additional letters of support from Mr. Shabazz's friends).)

Mr. Shabazz appears to make these statements in relation to his argument that the 18 U.S.C. § 3553(a) sentencing factors support his requested sentence reduction, rather than his argument that extraordinary and compelling reasons justify a sentence reduction.  (*See, e.g.,* Reply at 1 (contending that his actions in prison demonstrate that a reduced sentence of 25 years

not established "extraordinary and compelling" reasons justifying a reduction in sentence,[11] the court DENIES his motion.

### IV. CONCLUSION

For the foregoing reasons, the court DENIES Mr. Shabazz's motion for a reduction in sentence pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) (Dkt. # 150).

Dated this 6th day of October, 2022.

JAMES L. ROBART
United States District Judge

---

is appropriate).)  Even if the court were to consider Mr. Shabazz's rehabilitation within its extraordinary and compelling analysis, such rehabilitative efforts do not alone establish "extraordinary and compelling" circumstances warranting a reduction. *See* 28 U.S.C. § 994(t) ("Rehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason" for a reduction in sentence.); *see also Suryan*, 2021 WL 3510423, at *3; *United States v. Cruz-Cruz*, No. CR13-0049RSL, 2021 WL 1968389, at *5 (W.D. Wash. May 17, 2021). The court further finds that, even when Mr. Shabazz's rehabilitation is considered together with his other arguments regarding solitary confinement, he has not established "extraordinary and compelling" reasons justifying a reduction in sentence.

[11] Having determined that Mr. Shabazz has not made the requisite showing of extraordinary and compelling reasons warranting a reduction in sentence, the court need not analyze whether a reduction in Mr. Shabazz's sentence would be consistent with the factors set forth in 18 U.S.C. § 3553(a).

ORDER - 11